2021 IL App (1st) 192121-U

No. 1-19-2121

Order filed January 8, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 2253 |
| | ) | |
| KAREEM JOUDEH, | ) | Honorable |
| | ) | Colleen Ann Hyland, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ODEN JOHNSON delivered the judgment of the court.

Presiding Justice Mikva and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Defendant's contention that the trial court abused its discretion when it sentenced him to eight years' imprisonment for attempted first degree murder is forfeited where defendant did not object to his sentence during the sentencing hearing, file a post sentencing motion, or argue for plain error review.

¶ 2    Following a jury trial, defendant Kareem Joudeh was convicted of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) and aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2016)) for stabbing his sister twice in the chest. The trial court merged the

battery conviction into the attempted murder conviction and sentenced defendant to eight years' imprisonment. On appeal, defendant solely contends that the trial court abused its discretion and imposed an excessive sentence where the court should have sentenced him to the minimum term of six years' imprisonment because this was his first conviction. We affirm.

¶ 3    Prior to trial, defendant underwent two behavioral clinical examinations (BCX) and was found mentally fit to stand trial. At trial, defendant's sister, Samha Joudeh, testified that in January 2016, she was living in her family home in Bridgeview with her parents, her four brothers, and her sister. On the morning of January 15, Samha was eating breakfast in the bedroom she shared with her sister, Remah, who was sleeping. Defendant began hitting and kicking her bedroom door hard, repeatedly stating, "I'm going to kill her." He broke the door. He went downstairs to the kitchen. Samha threw a canvas painting down the stairs, but it did not strike defendant. Samha heard defendant continuously yelling, "I'm going to kill her." Samha tried unsuccessfully to put the door back into place. Defendant returned upstairs and entered his own bedroom screaming, "I'm going to kill her." Defendant ran his body into Samha's bedroom door, knocking it down. He entered her bedroom holding a knife in his hand. Their brother Ahmad wrapped his arms around defendant and tried to pull him back. Samha was standing on top of her bed holding a long wooden stick in her hand. When she observed her father and siblings in the doorway, Samha jumped off her bed and dropped the stick, attempting to escape from her bedroom. Defendant broke free from Ahmad. He grabbed and pulled on Samha's hair from behind. Remah tried to pull defendant away from Samha, and the entire family was screaming. Defendant stabbed Samha twice in the chest, hard and intentionally, still yelling, "I'm going to kill her."

¶ 4    When defendant stopped stabbing Samha, she ran from the bedroom, down the stairs, and into the kitchen, where she called 911. She was ~~severely~~ bleeding severely. ~~Samha called 911.~~ Police and paramedics arrived and rushed her to the hospital. Samha testified about a prior incident in August 2013 when she and defendant were arguing, and he ran after her with a kitchen knife. The following day the police arrested defendant. In January 2015, defendant and Samha were arguing, and he entered her bedroom and threw a fan at her, which struck her stomach. Samha retrieved a knife she had in her bedroom and fought back. Defendant screamed, "Call the police before I kill her." The police came to their house and arrested defendant.

¶ 5    Remah Joudeh testified that on the morning of January 15, she awoke when she heard defendant and Samha arguing and fighting inside the bedroom. Remah tried to tell them to calm down. She did not recall defendant having a knife in his hand. She denied that defendant lunged at or cut Samha and denied that Samha was bleeding. Remah only recalled that Samha was in pain and crying. After the altercation, Remah and a couple family members called the police. Remah acknowledged that Samha kept a knife in their bedroom.

¶ 6    Bridgeview police officer Kenneth Keyser testified that about 10:40 a.m. on January 15 he entered the Joudeh residence and observed Samha bleeding in the kitchen. Defendant was found in an upstairs bedroom holding a lock-blade knife in his right hand. Police yelled at defendant to drop the knife. He did not comply. Keyser readied his Less Lethal (beanbag) shotgun by putting a beanbag in the chamber. Upon hearing the noise of the shotgun, defendant dropped the knife. He was then arrested. Keyser recovered the knife from the floor and observed blood on the blade.

¶ 7    Dr. James Doherty, a trauma surgeon at Advocate Christ Medical Center, testified that he treated Samha in the emergency department. Samha arrived at the hospital pale and in shock. She

had a fast heart rate and was having trouble breathing. Samha had two one-inch laceration wounds on her chest to the left of her breastbone. Her left lung was partially collapsed and there was blood in her left chest. As they drained the blood from her chest, her blood pressure dropped. Her condition deteriorated and she underwent emergency surgery of her left chest. A hole in the inner lining of Samha's chest cavity was bleeding. In addition, her large mammary artery was cut into two pieces and actively hemorrhaging. Samha was bleeding to death. If not for the emergency surgery, she likely would have died. Doherty tied off the artery to stop the bleeding. After surgery, Samha was admitted to the intensive care unit and hospitalized for nine or ten days. The surgery and recovery were very painful, and there was a very high risk of complications related to her breathing.

¶ 8    After trial, the jury found defendant guilty of attempted first degree murder and aggravated domestic battery.

¶ 9    Following another BCX, defendant was found mentally fit for sentencing. At sentencing, Samha read her victim impact statement in which she described the offense as unforgettable and "possibly unforgiveable forever." She suffered pain and hurt. She stated that defendant had demonstrated threatening behavior many times and the warning signs of his mental health problems should have been observed. Samha feared she would be a victim of a crime again and asked for justice for what defendant did to her. Nevertheless, Samha asked that defendant receive a "small" sentence and suggested one year. She emphasized that it was important that he receive the "best mental help possible" while serving his sentence. Samha was certain defendant knew what he did wrong. She also asked that the court not impose a lengthy sentence because she and her family did not need more heartbreak.

¶ 10    In aggravation, the State argued that defendant violently attacked Samha, the attack was unprovoked, and it nearly ended her life. The State argued that the attack would affect Samha for the rest of her life, and that the sentence should send a message to defendant that his actions against his sister were horrible. The State noted the sentencing range of 6 to 30 years' imprisonment and asked the court to impose a sentence commensurate with the facts and circumstances in the case.

¶ 11    In mitigation, defense counsel argued that years of antagonism in the household gave rise to the attack, which was not unprovoked. Counsel disagreed with the BCX findings and argued that defendant had mental health issues. Counsel noted Samha's remarks in her statement and her request that defendant receive a short sentence and mental health treatment. Counsel argued that a minimum sentence of six years was appropriate under the circumstances in the case.

¶ 12    In allocution, defendant apologized to Samha and his family, and expressed remorse for his actions. He stated that at the time of the attack, he had just been released from a mental health hospital, he did not want to believe he was ill, and he was not taking medication. Defendant stated that he did not recognize himself and did not think he would be capable of doing what he did. Defendant stated he was grateful Samha was alive and he wished he could "take it back." Defendant stated that he loved his sister and would give his life so she could live forever. Defendant asked that he receive the minimum sentence.

¶ 13    The trial court stated that it considered the evidence presented at trial, the information contained in the presentence investigation report, the factors in aggravation and mitigation, and the parties' arguments. The court noted Samha's request for a lenient sentence and the fact that defendant did not have a significant criminal history. The court stated that it had to consider that defendant's conduct caused a very serious life-threatening injury to Samha. The court merged the

aggravated domestic battery offense into the attempted first-degree murder offense and sentenced defendant to eight years' imprisonment.

¶ 14    Defendant did not object to his sentence. The trial court admonished defendant that to challenge his sentence, prior to filing an appeal, he must file a written motion to reconsider the sentence in the trial court within 30 days. The court advised defendant that such motion must set forth the reasons his sentence should be reconsidered, and that anything he failed to include in his written motion "would be waived for all time." The court further admonished defendant that, to appeal his sentence, he must file a notice of appeal within 30 days from the court's order disposing of his motion to reconsider the sentence. Defendant did not file a post-sentencing motion challenging his sentence.

¶ 15    On appeal, defendant contends that the trial court abused its discretion and imposed an excessive sentence, whereas the court should have sentenced him to the minimum term of six years' imprisonment because this was his first conviction. Defendant points out that Samha requested he be sentenced to only one year in prison and argues that the trial court failed to consider Samha's urging that he receive a minimum term. Defendant argues that the court failed to consider his lack of criminal history, his serious mental illness, his rehabilitative potential, his remorse, and the fact that his conduct was motivated by years of fighting with Samha.

¶ 16    The State responds that defendant has forfeited the issue for appeal because he did not object to his sentence during the sentencing hearing and did not file a motion to reconsider the sentence. The State further asserts that this court cannot consider defendant's issue under the plain error doctrine because defendant did not argue for plain error review, and thus, we must honor his forfeiture. Alternatively, the State argues that the trial court did not abuse its discretion where the

eight-year sentence is within the statutory range and the record shows that the court considered all the relevant factors in aggravation and mitigation, including defendant's mental health, his lack of criminal history, and Samha's request for a lenient sentence.

¶ 17    Defendant did not file a reply brief responding to the State's forfeiture argument.

¶ 18    It is well settled that to preserve a sentencing error for appellate review, both a contemporaneous objection during the sentencing hearing and a written post-sentencing motion raising the issue are required. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Here, the record shows that defendant made no objection at any time during the sentencing hearing. Nor did defendant file a written post-sentencing motion. The record further shows that the trial court thoroughly admonished defendant that to challenge his sentence, prior to filing an appeal, he must file a written motion to reconsider the sentence in the trial court within 30 days of the sentencing hearing. The court also admonished defendant that any challenge to his sentence not raised in a written post-sentencing motion "would be waived for all time." We therefore find that after being properly admonished by the trial court, defendant failed to preserve his sentencing challenge for appeal, and it is forfeited. *Id*. at 544-45.

¶ 19    Alternatively, this court may review defendant's claim of error only if he has established plain error. *Id.* at 545 (citing Ill. S. Ct. R. 615(a)). It is defendant's burden to persuade the reviewing court that plain error occurred. *Id.* "A defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion." *Id.* Where defendant fails to meet his burden, his procedural default will be honored. *Id.*

¶ 20    Here, defendant has not argued that his sentencing challenge should be reviewed as plain error. Accordingly, he has failed to meet his burden, and this court is precluded from considering the merits of his argument. *Id.* at 550. We therefore honor his forfeiture of the issue.

¶ 21    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 22    Affirmed.